**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLAUDE CARR,<br><br>                    Plaintiff,<br><br>        v.<br><br>TED PRUITT,<br><br>                    Defendant. | Case No. 1:17-cv-01769-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 74, 78) |

Plaintiff Claude Carr is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion for summary judgment, filed on January 7, 2021, and Defendant's motion for summary judgment, filed on February 16, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding on a claim against Ted Pruitt ("Defendant") for deliberate indifference in violation of the Eighth Amendment.  (ECF Nos. 14, 15.)

Defendant filed an answer on November 13, 2018.  (ECF No. 22.)

On December 11, 2018, Defendant filed a motion to revoke Plaintiff's *in forma pauperis* status and require prepayment of the filing fee.  (ECF No. 23.)  On January 14, 2019, Plaintiff filed an opposition to the motion to revoke his *in forma pauperis* status.  (ECF No. 26.)

On February 6, 2019, the undersigned issued Findings and Recommendations recommending that Defendant's motion to revoke Plaintiff's in forma pauperis status be denied. (ECF No. 27.)

On May 22, 2019, the Findings and Recommendations were adopted in full, and Defendant's motion to revoke Plaintiff's in forma pauperis status was denied. (ECF No. 29.)

On May 23, 2019, the Court issued the discovery and scheduling order. (ECF No. 30.)

On July 8, 2019, the Court referred the case to post-screening Alternative Dispute Resolution, stayed the case for 60 days, and scheduled a settlement conference for August 29, 2019. (ECF No. 35.)

On September 4, 2019, after the case did not settle, the Court lifted the stay of the proceedings and amended the discovery and scheduling order. (ECF No. 46.)

On April 17, 2020, Plaintiff filed a motion for summary judgment. (ECF No. 56.) Defendant filed an opposition on May 11, 2020. (ECF No. 58.)

On May 20, 2020, the undersigned issued Findings and Recommendations recommending that Plaintiff's motion for summary judgment be denied, without prejudice, pursuant to Federal Rule of Civil Procedure 56(d). (ECF No. 59.) The Findings and Recommendations were adopted in full on June 25, 2020. (ECF No. 66.)

On January 7, 2021, Plaintiff filed a second motion for summary judgment. (ECF No. 74.) Defendant filed an opposition on January 28, 2021. (ECF No. 75.)

On February 16, 2021, Defendant filed a motion for summary judgment. (ECF No. 78.) Plaintiff filed an opposition on March 5, 2021, and Defendant filed a reply on March 19, 2921. (ECF Nos. 81, 84, 85.)

## II.

## LEGAL STANDARD

### A.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including

but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). A cross-motion for summary judgment requires the court to apply the same standard and rule on each motion independently. Creech v. N.D.T. Indus., Inc., 815 F. Supp. 165, 166–67 (D.S.C. 1993). When both parties have moved for summary judgment, "[t]he granting of one motion does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts." Stewart v. Dollar Fed. Sav. & Loan Ass'n, 523 F. Supp. 218, 220 (S.D. Ohio 1981) (citing Schlytter v. Baker, 580 F.2d 848, 849 (5th Cir. 1978)). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses

thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.     Summary of Plaintiff's Allegations

Plaintiff alleges that on June 21, 2016, while he was performing his job as a waste manager in the California Prison Industry Authority (CAL-PIA) food and beverage shop, Defendant Pruitt, Plaintiff's supervisor, required Plaintiff to manual lift and stack bags of compacted plastic weighing between 90 to 150 pounds onto pallets without the aid of compacting machinery. Plaintiff alleges that he performed this work under threat of discipline and termination. According to Plaintiff, requiring him to manually package and stack bags of compacted plastic violated state and federal guidelines, laws, policies, regulations and practices and procedures for maintaining a safe working environment. As a result of Defendant's demand that Plaintiff work without mechanical assistance, Plaintiff claims that he sustained injuries to his back, neck, and genital areas, requiring ongoing medical treatment, and continued severe pain, suffering and discomfort.

### B.     Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment against Defendant Pruitt claiming that he required Plaintiff to compact and lift plastic bags that Plaintiff was unable to lift, resulting in an injury to Plaintiff's back and groin areas.

Defendant opposes Plaintiff's motion and argues that he has failed to offer any evidence that Defendant Pruitt was aware that Plaintiff was filling the garbage bags to a level that Plaintiff was unable to lift, or that Defendant Pruitt was aware that Plaintiff was stacking heavy waste materials without the assistance of another inmate, which was required by Plaintiff's work agreement.

///
///
///

4

1.    <u>Plaintiff's Statement of Relevant Undisputed Facts</u>[1]

a.    Plaintiff Claude Carr was in the employ of California Substance Abuse Treatment Facility (CSATF) CALPIA (California Prison Industry Authority) Food and Beverage Shop at the waste disposal position from April 1, 2016 through June 21, 2016.  (Ex. A.)

b.    On June 21, 2016, Defendant Ted Pruitt was employed as a Supervisor and was present at CSATF CALPIA Food and Beverage Shop.  (Ex. B.)

c.    As Supervisor it was Defendant's responsibility to instruct inmates in their daily duties in the CALPIA.  (Ex. C.)

d.    On January 2, 2015, a work order request was submitted by N. Maloy altering that a compactor had a loose handle and metal worn away.  (Ex. D.)

e.    On March 16, 2016, a work order request was submitted by Farrell altering that "compactor is leaking hydraulic fluid and electric need service (light not working).  (Ex. E.)

f.    On May 2, 2016, a work order was submitted by "maintenance" alerting that "compactor needs to be replaced.  The seal is busted on the ram."  (Ex. F.)

g.    On June 21, 2016, the compacting machine was inoperable as it was leaking hydraulic fluid, and Plaintiff did not return to work after that date.  (Ex. G.)

2.    <u>Analysis of Plaintiff's Motion</u>

The Eighth Amendment protects prisoners from inhumane conditions of confinement as well as inhumane methods of punishment. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir.2006). The prohibition against cruel and unusual punishment applies to all conditions within a prison, including work programs, medical care, housing facilities, security measures, etc. <u>See, e.g.</u>, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 344–47 (1981). To be actionable, a prison official's conduct "must involve more than ordinary lack of due care for the prisoner's interests or safety." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986); <u>see also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>Wilson v. Seiter</u>, 501 U.S. 294, 298–99 (1991) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in

_____

[1] Hereinafter referred to as "PUdF."

connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock"). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835–36 & n. 4 (1994); Toguchi v. Chung, 391 F.3d 1051, 1057(9th Cir. 2004).

An unsafe workplace alone does not equal a per se violation of the Eighth Amendment. See Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir.1996). In the context of prisoner working conditions, the Eighth Amendment is implicated only when a prisoner alleges that a prison official compelled him to "perform physical labor which [was] beyond [his] strength, endanger[ed his life] or health, or cause[d] undue pain." Morgan, 465 F.3d at 1045, quoting Berry v. Bunnell, 39 F.3d 1056 (9th Cir. 1994). Prison officials are liable for a prisoner's workplace injury only if they were deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 837 ("the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference"); see Wilson, 501 U.S. at 298–99, 302–03 (the official must actually know of the risk yet fail to take reasonable measures to ensure the prisoner's safety); see also LeMaire v. Mass, 12 F.3d 1444 (9th Cir. 1993). Even "[i]f a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." Farmer, 511 U.S. at 834.

Although a prison official's conduct need not have been undertaken for the purpose of causing an inmate harm before it violates the constitution, a "sufficiently culpable state of mind" requires that the conduct involve more than mere negligence. Id. at 837, 847 (nothing less than recklessness in the criminal sense, that is, subjective disregard of a risk of harm of which the actor is actually aware, satisfies the "deliberate indifference" element of an Eighth Amendment claim). If the risk of harm was obvious, the trier of fact may infer that a defendant knew of the risk, but obviousness per se will not impart knowledge as a matter of law. Id. at 840–42.

Here, Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law. It is undisputed that on June 21, 2016, Defendant Ted Pruitt was employed as a Supervisor and was present at CSATF CALPIA Food and Beverage Shop. (PUdF b.) As Supervisor it was Defendant's responsibility to instruct inmates in their daily duties in the CALPIA. (PUdF c.) On January 2, 2015, a

work order request was submitted by N. Maloy altering that a compactor had a loose handle and metal worn away. (PUdF d.) On March 16, 2016, a work order request was submitted by Farrell altering that "compactor is leaking hydraulic fluid and electric need service (light not working). (PUdF e.) On May 2, 2016, a work order was submitted by "maintenance" alerting that "compactor needs to be replaced. The seal is busted on the ram." (PUdF f.) On June 21, 2016, the compacting machine was inoperable as it was leaking hydraulic fluid, and Plaintiff did not return to work after that date. (PUdF g.) In support of his opposition, Defendant cites to portions of Plaintiff's deposition testimony which he argues fails to demonstrate entitlement to judgment as a matter of law. In deciding a motion for summary judgment, a court may not resolve conflicting evidence. Soremekun v. Thrifty Payless, Inc., 509 F.3d at 984. Rather, summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 US 242, 248 (1986). Plaintiff has failed to carry his initial burden of demonstrating that summary judgment is proper and that no reasonable trier of fact could find other than for him. Based on the evidence presented, Plaintiff has failed to demonstrate, as a matter of law, that there is no reasonable genuine issue of material fact that Defendant personally participated in the alleged constitutional violation, or that Defendant had knowledge of the alleged safety risk. Accordingly, Plaintiff's motion for summary judgment as a matter of law must be denied.

### C. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on the grounds that he is entitled to judgment as a matter of law. Defendant submits the undisputed evidence establishes that when the compacting machine was broken, Plaintiff's job consisted of pushing a cart around the shop from station to station collecting discarded plastic bags. Plaintiff then manually compacted the bag of collected garbage by stepping on it, then stacking the bags until they could be moved to the outside dumpster. Plaintiff did not weigh the bags of garbage, does not know how much the bags weighed, and was not ordered by Defendant Pruitt to collect a specific amount of garbage to fill each collection bag. Plaintiff chose the amount of garbage that each collection bag contained. The weight of the manually compacted garbage is generally between fifty and sixty pounds, below Plaintiff's lifting restriction of seventy-five pounds. Additionally, Plaintiff did not complain to Defendant Pruitt that manually

collecting and stacking the garbage was causing him back pain or injury. Defendant also argues he is entitled to qualified immunity because no prison official would reasonably believe that having an inmate pick up and stack garbage manually violated the Eighth Amendment.

In opposition, Plaintiff argues that Defendant has failed to offer evidence that he was not deliberately indifferent to Plaintiff's health and safety when he ignored Plaintiff's complaint that he was having difficulty lifting and threatened Plaintiff with disciplinary action and termination if he could not complete the task.

      1.     <u>Defendant's Statement of Relevant Undisputed Facts</u>[2]

      a.     Plaintiff Claude Carr is a state prisoner who was housed at CSATF at all times material to the matters at issue. (Defs.' Ex. A, Attach. 1, declaration of J. Barba and documents from Plaintiff's central file, DX A-1, p. 3.) Plaintiff was assigned to work in the Food and Bread shop as a handler between January and June 2016. (Defs.' Ex. C.)

      b.     Defendant T. Pruitt is the Industrial Supervisor of the Food and Bread Shop at CSATF at all times material to the matters at issue. (ECF No. 1, at section B(2).)

      c.     Each inmate who works in the CALPIA Food and Beverage Shop goes through an orientation where they receive training on industrial safety practices. (Defs.' Ex. B, Declaration of T. Pruitt ¶ 4.)

      d.     Inmates who work in the Food and Beverage Shop also received monthly safety training. (<u>Id.</u>)

      e.     One safety technique that is emphasized is the technique for proper lifting. (<u>Id.</u>) Inmates are taught that if they need assistance lifting anything, they are to seek the help of other inmates in the shop before trying to lift a heavy item by themselves. (Defs.' Ex. B, ¶ 5.)

      f.     Inmates in the Food and Beverage Shop can also take part in an inmate employability program, where they receive additional information on various subjects, and take a test regarding the information they have learned. (Defs.' Ex B, ¶ 8.) For every test the inmate passes he gets milestones. The milestone take time off of the inmate's sentence. (<u>Id.</u>)

---

[2] Hereinafter referred to as "DUdF."

g. One such test is the TPC 109, regarding industrial safety and health. This test also includes information on proper lifting techniques.[3] (Defs.' Ex. B, ¶ 9.)

h. Plaintiff took the TCP 109 course and passed, earning a certificate and milestone credit. (Defs.' Ex. B, ¶ 10.)

i. On January 26, 2015, Plaintiff signed the Code of Safe Practices for PIA Food Packaging – CSATF. (Defs' Ex. C, attachment 1, declaration of C. Mossingler and documents from Plaintiff's CALPIA file, pp. 13, 15.)

j. That document contains a section on lifting that states, "use proper lifting, reaching, and carrying techniques and wears and wears proper personal protective equipment when required. Get help if you need to move a heavy object." (Defs.' Ex. B, ¶ 7.)

k. In June 2015, Plaintiff was assigned as a Food and Beverage Handler. (Defs.' Ex. B, ¶ 11.) In that position, Plaintiff used a compactor to compress and stack plastic waste. (Id.) The compacting machine that Plaintiff used feeds collected plastic waste, generally bread wrappers, into the machine. (Id.) When the machine is full, the compactor bundles the waste. (Id.)

l. Each of the machine compressed bundles of plastic waste weighs approximately 150 pounds. (Defs.' Ex. B, ¶ 12.)

m. Once the machine compacts the plastic waste, the bottom portion of the compactor is detached and wheeled to a pallet. The operator then uses a lift that is also part of the lower portion of the compactor, and moves the compacted bundle onto a pallet where it remains until it is loaded onto a trailer by the dock workers. (Defs.' Ex. B, ¶ 13.)

n. When the compacting machine is broken, the plastic waste must still be collected and packaged into compacting bags and loaded onto pallets. (Defs.' Ex. B, ¶ 14.)

o. Every fifteen minutes, the assigned inmate walks the floor, pushing a cart from station to station to collect the plastic waste from the machines into a compactor bag. (Defs.' Ex. B, ¶ 15.) A

---

[3] Plaintiff attempts to dispute this fact by stating that he brought his safety concerning to Defendants' attention who threatened with disciplinary action or termination. However, Plaintiff mischaracterizes this fact, and his response is outside the scope of the fact. Accordingly, this fact is undisputed.

compacting bag is fitted onto the cart, and fixed to remain open so the inmate doesn't have to hold the bag while he is filling it.  (Id.)

        p.     The inmate puts as much plastic waste into the compactor bag as he can, and then ties off the bag.  (Defs.' Ex. B, ¶ 16.)

        q.     As the bags are manually filled and tied off, they are loaded onto a pallet one by one, then wrapped with stretch wrap to keep the bags from falling over.  (Defs' Ex. B, ¶ 17.)

        r.     Using a pallet jack, the inmate worker puts the pallet onto the dock, where it is later placed onto a trailer by the dock workers.  (Defs.' Ex. B, ¶ 18.)

        s.     According to Defendant, the hand-compacted bags generally weigh between fifty to sixty pounds.  (Defs.' Ex. B, ¶ 19.)  Plaintiff has never weighed a manually compacted bag of plastic waste, and only guessed they weighed between ninety and 150 pounds.  (Defs.' Ex. D, transcript of Plaintiff's deposition, at 24:1-7; 26:7-21.)[4]

        t.     When the compacting machine was inoperable in 2016, Plaintiff was assigned to collect and compact the plastic waste manually.  (Defs.' Ex. B, ¶ 20; transcript of Plaintiff's deposition, at 25:10-24.)

        u.     In June 2016, Plaintiff was compacting and lifting the bags manually.  (Defs.' Ex. B, ¶ 20.  Prior to the injury at issue in this action, Plaintiff had a lifting restriction of seventy-five pounds. (Defs.' Ex. A-1 p. 4; Defs' Ex. D, transcript of Plaintiff's deposition, at 20:19-21:19; 22:18-19.)

        v.     Defendant did not tell Plaintiff to put a specific amount of collected waste into each compacting bag.  (Defs' Ex. B, ¶ 21.)

        w.     On June 21, 2016, Plaintiff informed Defendant that he injured himself.  (Defs.' Ex B, ¶ 25.)

### 2.     Analysis of Defendant's Motion

In the operative complaint, Plaintiff attests, under penalty of perjury, that he was subjected to

---

[4] Defendant's estimate of the weight was conducted after the incident at issue and after Plaintiff filed this action.  (Defs.' Ex. D, transcript of Plaintiff's deposition at 26:22-27:1.)

wanton and unnecessary infliction of pain when, on June 21, 2016, "on threat of disciplinary and termination, by (PIA) Supervisor [Defendant], to manually perform the labors of the compacting machinery, which were, to compact, lift, and aid in the stacking onto pallets, bags of compacted plastic weighing between 90-150 pounds each, which resulted in Plaintiff sustaining injuries to his back, neck, and genital areas, requiring ongoing medical treatment…." (Compl. at 5.)[5]  In his opposition, Plaintiff elaborates that he informed Defendant that he was having difficulty lifting the compacted bags, and Defendant thereafter threatened him with disciplinary action and termination which compelled Plaintiff to complete the task.  (Opp'n at 2.)  However, Plaintiff submits that he had no authority to assign another inmate to assist him with lifting the compacted bags.  (Id.)

In contrast, Defendant attests, under penalty of perjury, that Plaintiff "never informed him that he was incapable of performing the compacting manually, or that he need[ed] assistance to do the job manually." (Defs.' Ex. B, ¶ 22.)  Defendant further attests that Plaintiff never told him that he had a pre-existing back injury that made lifting difficult, and had Plaintiff informed him he would have reassigned him, or accompanied him in some other way.  (Id. ¶¶ 23-24.)

The parties do not dispute that on June 21, 2016, Plaintiff had a medical chrono which restricting him from lifting in excess of 75 pounds.[6]  (DUdF u.)  There is also no dispute that on June 21, 2016, the compacting machine was inoperable, and Plaintiff was assigned to collect the plastic waste manually. (DUdF t.)  Further, Defendant admits that he advised Plaintiff to seek the assistance of another inmate if necessary.  (Defs.' Ex. B, at ¶ 21.)  Plaintiff reasons that he must have communicated his complaint to Defendant otherwise he would not have instructed Plaintiff to get help from another inmate.  (Opp'n at 3.)  Based on the parties' dispute circumstances the surrounding of the incident on June 21, 2016, and based on the evidence presented, there is a genuine issue of material fact in dispute that hinges on the credibility of the parties which cannot resolve the issue by way of motion for summary judgment.  See

---

[5] A verified complaint signed under penalty of perjury may be considered an affidavit in opposition to a motion for summary judgment to the extent that it sets forth facts within the Plaintiff's personal knowledge that are admissible into evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

[6] While Defendant submits that the manually packed bags weighed no more than 50 pounds, this information was obtained after the incident at issue and does not resolve what Defendant knew before or at the time of the incident at issue.

Morgan v. Morgensen, 465 F.3d at 1044, 1046 (summary judgment on Eighth Amendment claim properly denied in case brought by prisoner whose thumb was torn off by a printing press that was known to have loose chains that "caused the press to buck and shake"); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995) (requiring inmates to clean from attic material known to contain dangerous asbestos without protective gear demonstrated deliberate indifference). Accordingly, Defendant's motion for summary judgment should be denied.

Defendant also argues he is entitled to qualified immunity because taking the facts in the light most favorable to Plaintiff, there is no evidence that a reasonable supervisor in Defendant Pruitt's position would have appreciated that having Plaintiff manually package and lift plastic waste would create an obvious risk of harm.

"Qualified immunity shields public officials from civil damages for performance of discretionary functions. It is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " Mueller v. Auker, 576 F.3d 979, 992 (9th Cir. 2009) (italics in original and citation omitted). "Qualified immunity shields a [correctional] officer [or medical staff member] from suit when [they] make[ ] a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [they] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." Mueller, 576 F.3d at 993.

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]' " Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (citation omitted). In applying the qualified immunity doctrine, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." Stanton v. Sims, 571 U.S. 3, 6 (2013) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). A right is clearly established where it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." Hines v. Youseff, 914 F.3d 1218, 1229 (9th Cir. 2019) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). In determining if the right is clearly established, the court must consider the law, "in light of the specific context of the case, not as a broad general proposition." Hines v. Youseff, 914 F.3d at 1229 (quoting Mullenix v. Luna, 577 U.S 7, 12 (2015)).

Here, the alleged conduct in Defendant threatening disciplinary action and/or termination if Plaintiff did not continue to manually package and lift the plastic waste despite Plaintiff's complaint that he could not do so safely, if true, constitutes deliberate indifference to Plaintiff's safety. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Viewing the evidence in the light most favorable to Plaintiff, the contours of Plaintiff's rights under the Eighth Amendment were sufficiently clear that a reasonable officer would understand that his or her actions were unlawful in the situation confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001). Accordingly, Defendant is not entitled to judgment as a matter of law based on qualified immunity.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment be denied; and

2.      Defendant's motion for summary judgment be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

13

may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**June 1, 2021**__

UNITED STATES MAGISTRATE JUDGE